38202-91564- RER

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

**NASHVILLE UNDERGROUND, LLC.**

       **Plaintiff,**

**VS.**                             **No.: 3:20-cv-00426
JURY DEMANDED**

**AMCO INSURANCE COMPANY,**

       **Defendant.**

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS**

---

Comes now Defendant, AMCO INSURANCE COMPANY, by and through counsel of record, pursuant to Rule 12 of the Federal Rules of Civil Procedure, and in support of its Motion to Dismiss states as follows:

**I.**    **INTRODUCTION**

This action arises out of Plaintiff Nashville Underground's ("Plaintiff') alleged business closure in response to orders from local public agencies relating to the COVID-19 pandemic.  Plaintiff's subsequent insurance claim for its economic losses was properly disclaimed by Defendant AMCO Insurance Company ("AMCO").  The plain language of the subject policy and Plaintiff's allegations make clear that Plaintiff's loss is not covered as Plaintiff concedes that the policy contains a Virus Exclusion that is fatal to Plaintiff's claims. In addition, Plaintiff cannot plead a direct physical loss or damage to the property at issue.

Clearly recognizing that the Business Income and Civil Authority provisions do

not apply, Plaintiff implies that its economic losses should be considered under the Food Contamination Endorsement ("FCE", First Amended Complaint, Ex. E)  However, the plain facts as alleged by Plaintiff render such argument meritless.  Specifically, Plaintiff fails to plead facts sufficient to meet the insuring agreement of the FCE, as there is no order directing Plaintiff to close its business due to "food contamination" as defined by the policy.

Thus, the First Amended Complaint attempts to manufacture coverage where none exists by pleading unwarranted legal conclusions and inferences, belied by actual facts.  As such, AMCO respectfully requests that this Court grant its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, in its entirety, and without leave to amend.

## II.    FACTUAL ALLEGATIONS

Plaintiff is a "restaurant, bar, nightclub and live music venue" operating in Nashville, Tennessee.  [First Amended Complaint, ¶7].  Plaintiff alleges that AMCO issued Policy Number ACP CPAA30-2-8529540 ("Policy") which provided business interruption coverage, subject to certain provisions, limitations, and exclusions.

According to the First Amended Complaint, Plaintiff was forced to fully shutter its business  pursuant to a March 17, 2020 Order from the Chief Medical Director of the Nashville-Davidson County Board of Health relating to the COVID-19 pandemic (the "March 17 Order").  [First Amended Complaint, ¶14.]  Plaintiff alleges, based on information and belief, the March 17 Order mandated the closure of all establishments that sold more alcohol than food because the Board of Health "were attempting to limit the spread of the Coronavirus through contamination of food, the conveyances of food,

2

contamination of employees and the contamination of the interior, structure, furnishings, fixtures and equipment of the restaurants and bars." [1] [First Amended Complaint, ¶13].

Plaintiff submitted a claim to AMCO for Plaintiff's economic losses resulting from its closure. Plaintiff alleges that AMCO investigated the claim, which included a review of guidelines from the Center for Disease Control, and various Tennessee Executive Orders. [See, Complaint, ¶ 23]. AMCO disclaimed coverage for the claim because there was no direct physical loss of or damage to covered property and the Virus and Bacteria exclusion precluded coverage. In addition, there was no evidence of food contamination at Plaintiff's location. [Complaint, ¶¶24-26].

As set forth below, Plaintiff's allegations establish that Plaintiff's lost income claim is simply not covered under the Policy.

## III.    PLAINTIFF FAILS TO ALLEGE FACTS WARRANTING RELIEF

### A.    Legal Standards Governing This Motion

A motion to dismiss tests the legal sufficiency of a pleading. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must provide the grounds entitling plaintiff to the relief requested beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007). Thus, unwarranted factual inferences and "conclusory allegations 'need not be accepted as true on a motion to dismiss.'" *El Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015) (footnote omitted); *Dauenhauer v. Bank of N.Y. Mellon*, 562 F.Appx. 473, 477 (6th Cir. 2014). Additionally, factual allegations that are either based on a plaintiff's belief simply (not fact) or create speculation or suspicion

---

[1] The First Amended Complaint vastly misstates the scope of the Order, and further contradicts the findings of the Tennessee Health department and the CDC.

of a legally cognizable cause of action are not sufficient to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551 (2007); *Flagstar Bank, 16630 Southfield Ltd. P'ship v. Flagstar Bank*, F.S.B., 727 F.3d 502, 506 (6th Cir. 2013); *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007).

In ruling on a motion to dismiss, the court may consider public records, matters subject to judicial notice, decisions of governmental agencies, as well as documents referred to in the complaint and central to the plaintiff's claim. *See*, *Wyser-Pratte Mgmt. Corp. Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 375-76 (2007).

The Interpretation of an insurance contract is governed by the same rules of construction used to interpret other contracts. *See Travelers Indem. Co. of America v. Moore & Associates, Inc.*, 216 S.W.2d 302 (Tenn. 2007). "An insurance contract 'must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning.'" *Id.* Therefore, absent fraud or mistake, the terms of a contract should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties. *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 387 (Tenn. 2009). Courts are not at liberty to rewrite a contract of insurance simply because it does not favor the terms or the results appear harsh. *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 731 (Tenn. Ct. App. 2000). If a contract of insurance is ambiguous and susceptible to two reasonable meanings, "... the one favorable to the insured must be adopted." *Gredig v. Tennessee*

*Farmers Mut. Ins. Co.*, 891 S.W.2d 909 (Tenn. Ct. App. 1994). Policy language is ambiguous only if it is capable of more than one reasonable interpretation. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). While exclusions are construed strictly, they should not be construed so narrowly as to defeat their evident purpose. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998).

Plaintiff asserts causes of action for breach of contract and declaratory relief arising from AMCO's denial of its business interruption claim. A plaintiff asserting a breach of contract claim in Tennessee must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract." *C. & W. Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007)(citations omitted). Plaintiff bears the burden of showing the loss is covered under the Policy.

The Complaint fails to state a claim for breach of contract or declaratory relief as Plaintiff does not allege facts which demonstrate AMCO's nonperformance amounting to a breach of the contract. As such, Plaintiff's causes of action fail as they do not allege facts sufficient to establish breach of contract warranting the relief Plaintiff seeks.

**B.     There Is No Coverage Under The Business Income Coverage Provisions**

The policy contains various forms and exclusions. At issue in this case are the policy's Business Income (And Extra Expense) Coverage Form, the Civil Authority additional coverage, the Exclusion of Loss Due to Virus or Bacteria, and the Food Contamination Endorsement (which contains limited business and extra expense coverage under specified circumstances that do not apply here).

5

The Policy's Business Income (And Extra Expense) Coverage Form provides:

1.   Business Income

     We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". **The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations** and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. …

2.   Extra Expense

     a.   Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

     b.   Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss. …

5.   Additional Coverages

     a.   Civil Authority

     When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

          (1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

          (2)  The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

\*\*\*\*\*

6

Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in the policy (First Amended Complaint, Exhibit B and D). Thus, to trigger coverage under the Business Income Coverage, Plaintiff must suffer a suspension of its operations, caused by direct physical loss of or damage to property at the insured location, which is caused by or results from a Covered Cause of Loss. However, before discussing Plaintiff's failure to allege direct physical loss, attention should be given to the policy's virus exclusion.

### 1.     There is no Covered Cause of Loss

As will be seen, the First Amended Complaint fails to allege any facts to establish Plaintiff suffered a loss of, or damage to, its property that was caused by or resulted from a Covered Cause of Loss, *i.e.*, direct physical loss not otherwise excluded or limited by the Policy. The facts of the First Amended Complaint also fall squarely into the ambit of the Exclusion of Loss Due Virus or Bacteria, as well other exclusions.[2]

### a.     The Virus Exclusion Bars Coverage for Plaintiff's Alleged Losses

The Policy's Exclusion of Loss Due to Virus or Bacteria ("Virus Exclusion") provides as follows:

A.     The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B.     **We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.**

---

2 For purposes of brevity, other applicable exclusions and/or policy terms will not be referenced herein. Defendant reserves the right to brief, or otherwise argue, those exclusions and/or policy terms at a later time as may be necessary.

7

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

As stated above, Plaintiff does not plead that COVID-19 was detected on its premises, and the Orders referenced do not state that was the case. Regardless, the Virus Exclusion bars coverage for all losses caused by viruses capable of inducing distress, illness or disease. COVID-19 is an infectious disease caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). This is exactly the type of virus which is intended to be excluded by the terms of the Virus and Bacteria Exclusion.

The Virus Exclusion is plain and clear, and was designed for this exact scenario. It is plain and unambiguous, and should be construed as written according to Tennessee law related to the interpretation of insurance contracts. Courts should not create an ambiguity where none exists. The virus exclusion specifically and clearly applies to all coverage forms under the policy. Courts that have evaluated similar exclusions have applied its plain language.[3]

Here, Plaintiff admits that its claims are based on alleged losses resulting from the coronavirus. Plaintiff admits that the March 15 Declaration and related orders were "in response to the fear of the spread of Coronavirus", that the Declaration was to implement "infection control" and that COVID-19 is a communicable disease…and presents a severe danger to the public health." (First Am. Comp. ¶12). Based upon Plaintiff's own allegations, there is no coverage pursuant to Business Income provisions

---

[3] *Certain Underwriters at Lloyd's London v. Creach*, Civ. A. No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013)(interpreting a similar "microorganism" exclusion); *Doe v. State Farm Fire & Cas. Co.*, 2015 WL 11083311 (N.H. Sept. 21, 2015); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F.App'x 655 (8th Cir. 2013); *Clarke v. State Farm Fla. Ins.*, 123 So.3d 583 (Fla. Dist. Ct. App. 2012).

because the cause of loss is expressly excluded by the virus exclusion. As the virus exclusion must be given it plain meaning, there is no coverage for Plaintiff's lost business income claim and the causes of action asserted in the Complaint fail. See, *Koegler v. Liberty Mutual Ins. Co.* 623 F. Supp.2d 481, 483 (S.D.N.Y 2009)(applying Communicable Disease exclusion finding that "losses due to Koegler's transmission of communicable disease are not covered under the policies is readily apparent from the face of those policies); *Polo Towers Master Owners Ass'n, Inc. v. Factory Mut. Ins. Co.*, 185 F.App'x 636 (9th Cir. 2006)(finding contamination exclusion unambiguous).

### 2. Plaintiff fails to allege direct physical loss of or damage to property at Plaintiff's premises.

As established above, there is no covered cause of loss due to the virus exclusion. Moreover, the First Amended Complaint contains only a boilerplate conclusion that Plaintiff has suffered losses and damages as a result of "one or more Covered Causes of Loss which are not specifically excluded or limited under the Policy." However, Plaintiff does not identify any Covered Causes of Loss provided in the Policy and does not specify which Policy provisions establish coverage for its claim. Such conclusory allegations are not sufficient to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly, supra,* 550 U.S. at 554. An insured has the burden to establish that a loss is covered by the policy. *Farmers Bank & Trust Co. of Winchester v. Transamerica Ins. Co.*, 674 F.2d 548, 551 (6th Cir. 1982)(applying Tennessee law)(citations omitted).

Tennessee courts have held the phrase "direct physical loss of or damage to property" is plain and unambiguous. *SE Mental Health Center, Inc. v. Pacific Ins. Co., Ltd.* (2006) 439 F.Supp.2d 831, 837. The words "direct physical" modify both "loss of"

and "damage to." *SE Mental Health Center, Inc. v. Pacific Ins. Co., Ltd.* (2006) 439 F.Supp.2d 831, 837 (citing *Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.* (2003) 114 Cal.App.4th 548, 554). The word "direct" as used in the phrase "direct physical loss" in a property insurance policy means "immediate" or "proximate", as opposed to "remote". 10A Couch on Ins. § 148:60.

Courts in other jurisdictions have held similarly. See, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.,* 17 F.Supp.3d 323 (S.D. N.Y. 2014) (policy that covered "direct physical loss or damage" required some form of actual, physical damage to the insured premises to trigger the loss of business income and extra expense coverage, and thus, the insured law firm was not entitled to recover under the policy for losses occasioned by its inability to access its office during a power outage); *Universal Image Productions, Inc. v. Chubb Corp.*, 703 F.Supp.2d 705 (E.D. Mich. 2010 (holding the insured's mold loss was not a "direct physical loss" within the meaning of the policy because the insured did not suffer any structural or any other tangible damage to the insured property.) The First Amended Complaint does not contain any explicit allegations that Plaintiff's property suffered direct, physical loss or damage. Instead, Plaintiff simply relies on the March 17 Order to support its lost business income claim. The March 17 Order contradicts Plaintiff's conclusory allegations. The March 17 Order does not reference Plaintiff's premises and it does not indicate or suggest that the Coronavirus was discovered or present at Plaintiff's premises.[4] Simply put, the March 17 Order is wholly inconsistent with any notion that

---

[4] Even if Plaintiff plead that coronavirus was present at its premises, this would not constitute physical loss or damage. See, *Mama Jo's v. Sparta Ins. Co.* 2018 WL 3412974 (S.D. Fla. June 2018), finding that there was no physical loss or damage where insured continuously cleaned construction debris and dust inside the insured building.

coronavirus was present at Plaintiff's premises, prompting the closure of Plaintiff's business.   Thus, Plaintiff's contentions that it has suffered direct physical loss of or damage to property as a result of the March 17 Order should be disregarded.   *Williams v. CitiMortgage, Inc.*, 498 Fed.Appx. 532, 536 (6th Cir. 2012)(citation omitted)("if a factual assertion in the pleadings is inconsistent with a document attached for support, the court is to accept the facts as stated in the attached document . . . and is not bound to accept as true a legal conclusion couched as a factual allegation"); *Creelgroup, Inc. v. NGS American, Inc.*, 518 Fed.Appx. 343, 347 (6th Cir. 2013) (affirming a Rule 12(b)(6) dismissal of a breach of contract action).

Several courts have also rejected claims for lost business income based on government action alone, without direct physical damage or loss.  See, *Brothers, Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 613 (D.C. 1970)(business income loss resulting from a riot-related curfew was not recoverable because it did not result from physical damage to the property or contents); *Two Caesars Corp. v. Jefferson Ins. Co.*, 280 A.2d 305, 307–308 (D.C. 1971)(government order prohibiting access did not trigger coverage because the policy required damage to or destruction of the business property); *Mac's Pipe & Drum, Inc. v. Northern Ins. Co.*, 280 A.2d 308, 309 (D.C. 1971) (finding the loss of business income resulting from a government order prohibiting the sale of food and alcohol was not a direct loss to the described property); *Adelman Laundry & Cleaners, Inc. v. Factory Ins. Ass'n*, 59 Wis.2d 145, 147–148 (1973)(finding no coverage where the loss was caused by a curfew imposed after a civil disturbance because access to the insured's premises was not denied based upon any physical damage to the insured's property).   Likewise, in this matter, any allegations that the

business premises were closed due to the threat of physical damage is equally unavailing. *Phoenix Ins. Co. v Infogroup Inc.*, 147 F.Supp.3d 815 (S.D. Iowa)(relocation due to threat of flood was not physical loss or damage)*.*

Plaintiff's causes of action must fail because Plaintiff has not suffered any direct physical loss of or damage to its property. Plaintiff's contention that it has suffered direct physical damage or loss resulting in the closure of its business is based purely on legal conclusions and unsubstantiated beliefs, not actual facts. Accordingly, Plaintiff's First Amended Complaint does not state actionable causes of action for breach of contract or declaratory relief.

### 3. The Civil Authority Coverage does not apply

As set forth above, Plaintiff does not allege damage to property insured by AMCO. In the event that Plaintiff argues that Civil Authority provisions provide coverage for its losses, such argument is without merit.

The Civil Authority provisions require a Covered Cause of Loss (which does not exist here, due to the Virus exclusion), damage to property other than property at the described premises <u>and</u> within 1 mile, and prohibited access to the area as a result of the damage. Plaintiff's First Amended Complaint fails to plead any of these contractual elements. To that end, plaintiff does not plead damage to property within 1 mile of its own, or even a covered cause of loss. Further, Plaintiff does not plead that it was denied access to the area by a civil authority. *See, e.g. Southern Hospitality, Inc. v. Zurich American Ins.* 393 F.3d 1137, 1140 (10th Cir. 2004); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp.2d 280 (S.D.N.Y. 2005)(where access was not prohibited, civil authority provisions did not apply). Instead, Plaintiff references only COVID 19

related Orders, none of which prevent access to the area.  Further, plaintiff admits that it could operate if it served menu items via drive thru, curb side pick up and/or delivery, facts which also establish that access was not prohibited.  Thus, the Civil Authority provisions do not apply.  *Dickie Brennan & Co. v. Lexington Ins. Co.* 636 F. 3d 683 (5th Cir. 2011); *United Airlines Inc. v Ins. Co. of State of Pa*.  385 F. Supp.2d 343 (S.D.N.Y 2005).

**C.    Plaintiff's Loss Is Not Covered Under the Food Contamination Endorsement**

Practically conceding that the Virus exclusion applies to the Business Income and Civil Authority provisions above, Plaintiff suggests that the Food Contamination Endorsement attached to its First Amended Complaint as Ex. E may have application here.  That is not the case. The Food Contamination Endorsement  provides as follows:

A.    The following is added to Additional Coverages:

Food Contamination

1.    If the business described in the Schedule is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of "food contamination", we will pay:

   a.    Your expense to clean your equipment as required by the Board of Health or any other governmental authority;

   b.    Your cost to replace the food which is, or is suspected to be, contaminated;

   c.    Your expense to provide necessary medical tests or vaccinations for your employees (including temporary and leased employees) who are potentially infected by the "food contamination". However, we will not pay for any expense that is otherwise covered under a Workers' Compensation Policy;

13

d.  The loss of Business Income you sustain due to the necessary "suspension" of your "operations" as a result of the "food contamination". The coverage for Business Income will begin 24 hours after you receive notice of closing from the Board of Health or any other governmental authority; ….

B.  For the purposes of this endorsement, "food contamination" means an outbreak of food poisoning or food-related illness of one or more persons arising out of:

1.  Tainted food you distributed or purchased;
2.  Food which has been improperly processed, stored, handled or prepared in the course of your business operations; or
3.  Food which has been contaminated by virus or bacteria transmitted through one or more of your employees, including temporary and leased employees.

The Food Contamination Endorsement requires, among other things, that (1) the insured premises is ordered closed by the applicable governmental authority (i.e., the Board of Health); and (2) the closure is the result of the discovery or suspicion of "food contamination", i.e., food poisoning or food related illness.

Here, the First Amended Complaint does not contain any allegations of closure due to food contamination at Plaintiff's premises.  First, the Orders referenced in the Complaint **do not reference Plaintiff or its premises at all.**  To that end, there is no evidence that Plaintiff received a notice of closing at any time from the Health Department.  Plaintiff does not allege that its business was ordered closed by the Health Department at any time.  For this reason alone, Plaintiff's argument fails.

Second, the Orders referenced in the Complaint do not discuss tainted food or improperly processed, stored, prepared, or handled food at any location, let alone Plaintiff's.  *See, Fresh Express Inc. v. Beazley Syndicate 2623/623 at Lloyd's* (2011) 199 Cal.App. 4th 1038, 1056 (finding no coverage for the insured's business interruption claim resulting from FDA advisory due to E. coli because the insured did not present

14

evidence of a nexus between its errors and the E. coli outbreak or the FDA's issuance

of its advisory). *See*, *Ruiz Food Products Inc. v. Catlin Underwriting*, 2012 WL 4050001

(E.D. Cal. Sept. 13 2012)(In the context of an insurance policy intended to cover

contaminated products, it is not reasonable for insured to expect coverage when there

is no showing that its products were tainted); *Little Lady Foods, Inc. v. Houston Cas.*

*Co.*, 819 F. Supp.2d 759 (N.D. Ill. 2011).

Further, as indicated above, the Orders do not reference any food poisoning or

food related illnesses. The Orders reference coronavirus which leads to the disease

COVID-19, which are not food-borne viruses or food-related illnesses. Likewise, the

FDA has stated that there is no evidence that food is associated with the transmission

of COVID-19.[5] According to the Center for Disease Control and Prevention ("CDC"),

"[c]oronaviruses are generally thought to be spread from person to person through

respiratory droplets. Currently, there is no evidence to support transmission of COVID-

19 associated with food." (CDC Website, Coronavirus (COVID-19) Frequently Asked

Questions).[6]

Thus, Plaintiff's complaint is devoid of facts sufficient to meet the insuring

agreement of the FCE because its alleged losses are not related to food contamination

at the insured location as required by the policy. Plaintiff relies solely upon the COVID

19 related orders and declarations. However, even Plaintiff admits that these local

directives allow restaurants to stay open, and also permit drive thru and curbside

service. Certainly, the Department of Health and Safety would not have allowed

---

[5] https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/coronavirus-disease-2019-covid-19-frequently-asked-questions#food

[6] https://www.cdc.gov/coronavirus/2019ncov/faq.html#:~:text=Coronaviruses%20are%20generally%20thought%20to,for%20general%20food%20safety

contaminated food to be distributed as long as it could be done via curbside or a drive thru, or in locations that served less alcohol. Thus, the plain language of the referenced Orders could not be logically construed as an order closing Plaintiff's business due to food contamination.

## IV.  CONCLUSION

Based on the foregoing, Defendant AMCO Insurance Company respectfully requests the Court grant this Motion and dismiss each of the causes of action alleged in the First Amended Complaint.

Respectfully submitted,

RAINEY, KIZER, REVIERE & BELL, P.L.C.

__s/Russell E. Reviere_____
Russell E. Reviere (BPR No. 07166)
Jonathan D. Stewart (BPR No. 023039)
Attorney for Defendant
209 East Main Street
P. O. Box 1147
Jackson, TN  38302-1147
(731) 423-2414
rreviere@raineykizer.com
jstewart@raineykizer.com

16

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was forwarded first class U.S. Mail, postage prepaid to

Kirk Clements
Attorney for plaintiff
105 Broadway, Suite 2
Nashville, TN 37201
kirk@kirkclemmentslaw.com

counselor of record for Plaintiff, and by electronic means via the Court's electronic filing system.

This the 9th day of June, 2020.

s/ Russell E. Reviere